IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DIANA GARCIA,

        Plaintiff,

v.                                      No. CIV-14-0049 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum (Doc. 20)*, filed July 23, 2014.   In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and *10*].   On September 17, 2014, Defendant filed a response to the motion [*Doc. 21*], and, on October 7, 2014, Plaintiff filed a reply [*Doc. 22*].   The Court has considered the motion, response, reply, and the relevant law.   Additionally, the Court has meticulously reviewed and considered the entire administrative record.   [*Doc. 13*].   For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.   Procedural History

      On June 16, 2010, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging that she became disabled on May 26, 2010.   [*Doc. 13-7* at 3-8].   Plaintiff stated that she became disabled due to Hepatitis C and depression.   [*Doc. 13-8* at 6].

The application was denied at the initial level on August 13, 2010 (*Doc. 13-5* at 4-7), and at the reconsideration level on November 12, 2010 (*id.* at 11-14).   Pursuant to Plaintiff's request (*id.* at 15-17), Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on April 12, 2012.   [*Doc. 13-3* at 30-55].   At the hearing, Plaintiff was present and testified.   *Id.* at 32, 38-50 and 53.   Vocational Expert (hereinafter "VE"), Pamela Bowman, was also present and testified.   *Id.* at 32 and 41-54.

On September 13, 2012, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.   [*Doc. 13-3* at 14-29].   Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10), and, on November 14, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-8), which made the ALJ's decision the final decision of the Commissioner.   On January 15, 2014, Plaintiff filed her complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084  (10th Cir. 2007)  (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.   20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the

claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 23, 1957.   [*Doc. 13-7* at 3].   Plaintiff has held the following jobs: dishwasher and housekeeper.   [*Doc. 13-8* at 7].   Plaintiff alleges that she is unable to work because of Hepatitis C and depression.   *Id.* at 6.   Plaintiff's medical records include: a Mental Residual Functional Capacity Assessment dated June 1, 2010, by Peggy Harter, LPCC (*Doc. 13-9* at 7-8); three Case Analyses, one dated July 12, 2010, by Janice Kando, M.D. (*Doc. 13-11*, at 28), one dated October 13, 2010, by Lawrence Kuo, M.D. (*Doc. 13-14* at 6), and one dated November 10, 2010, by Richard Reed, Ph.D. (*id.* at 7); a Psychiatric Review Technique, dated August 12, 2010, by Charles Mellon, M.D. (*Doc. 13-12* at 2-15); and a Consultative Psychological Examination Report, dated July 16, 2012, by Susan Flynn, Ph.D. (*Doc. 13-17* at 21-23).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's application date of May 26, 2010.   [*Doc. 13-3* at 16].   At step two, the ALJ found that Plaintiff has the following severe impairments: posttraumatic stress disorder and depression.   *Id.*   At the third step, the ALJ found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1  (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  *Id.* at 17.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "[Plaintiff] can make only simple, work-related decisions with few workplace changes[, s]he should not be required to work at production-rate pace[; and she] is limited to occupations working primarily with things rather than with people."  *Id.* at 18.  In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  *Id.* at 19.  The ALJ gave little weight to the opinion of Peggy Harter, LPCC, who completed a medical source statement on June 1, 2010, and found that Plaintiff has marked restrictions in activities of daily living and social functioning, moderate restrictions in concentration, persistence, and pace, and 1-2 episodes of decompensation.  *Id.* at 22 (citing *Doc. 13-9* at 2-8).  The ALJ stated that he gave significant weight to the opinion of Dr. Flynn, which the ALJ stated "seems compatible with [the ALJ's RFC] assessment."  *Id.* at 23.  The ALJ stated that, "[a]lthough [Plaintiff] had complaints of alleging [sic] disabling symptoms, the record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled an unable to work or even has limitations greater than those determined in [the ALJ's] decision."  *Id.*  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work, so the ALJ proceeded to the fifth step.  *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on November 23, 1957, so she was 52 years old at the time she filed her application, which is defined as an individual closely approaching advanced age. *Id.* The ALJ noted that Plaintiff has a limited education and is able to communicate in English. *Id.* The ALJ stated that "[t]ransferability of job skills is not an issue in this case because [Plaintiff's] past relevant work is unskilled." *Id.* (citing 20 C.F.R. § 416.968). The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. [*Doc. 13-3* at 23]. The ALJ stated that he asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as the following: hand polisher, packager, and laundry folder. *Id.* at 24. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion to reverse or remand: (1) that the ALJ erred at step two in finding that Plaintiff's hyperthyroidism was a non-severe impairment (*Doc. 20* at 4-7); and (2) that the ALJ erred at step four by failing to consider all of Plaintiff's impairments in her RFC determination and by failing to explain her findings with specificity (*id.* at 7-13). In response, Defendant contends that the ALJ did not err when she found that Plaintiff's

hyperthyroidism was a non-severe impairment, that substantial evidence supports the ALJ's RFC finding, and that the ALJ sufficiently explained the basis of her finding and her credibility assessment.   [*Doc. 21* at 5-14].

## A.   The ALJ's Step Two Finding

At step two, an impairment should be found to be severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 416.920(c). Under the *de minimus* standard, "only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process."   *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (citations and internal quotation marks and brackets omitted).   The claimant need only establish - and the ALJ need only find - one severe impairment to avoid a denial of benefits at step two.   *Dray v. Astrue*, No. 09-7058, 353 Fed. Appx. 147, 149, 2009 WL 3821522 (10th Cir. Nov. 17, 2009) (unpublished).   If the ALJ finds that the claimant has a severe impairment, then she may not deny benefits at step two, and she must proceed to step three.   *See id.*   Therefore, the "failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."   *Id.*

Plaintiff's contention that the ALJ erred at step two for failing to find that her hyperthyroidism is severe fails as a matter of law.   Even though the ALJ found that Plaintiff's hyperthyroidism was non-severe, the ALJ found that Plaintiff had two other severe impairments and proceeded to the subsequent steps of the sequential evaluation process.   *See* [*Doc. 13-3* at 16]. Therefore, any error in failing to find Plaintiff's hyperthyroidism severe at step two is not

reversible.  *See Dray*, 353 Fed. Appx. at 149.   For this reason, the Court finds that the ALJ did

not commit reversible error at step two.

## B.   The ALJ's RFC Determination

In addition to her step-two claim, Plaintiff contends that the ALJ erred at step four in her

RFC determination.  [*Doc. 20* at 7].   Specifically, Plaintiff contends that the ALJ only briefly

mentioned Plaintiff's hypertension, hyperthyroidism, hepatitis C and alcohol abuse (in remission)

(*id.* at 8-9), and failed to properly consider the opinion of Dr. Flynn, including his assessment of a

Global Assessment of Functioning score of 50 for Plaintiff (*id.* at 9-10).[1]   Plaintiff further

contends that the ALJ improperly considered the opinions of Peggy Harter, LPCC, and the state

agency consultants, failed to provide a function-by-function assessment of how she arrived at the

RFC, and erred in her credibility assessment.  *Id.* at 10-11.   In response, Defendant states that the

ALJ's RFC determination was not in error because the ALJ discussed all of Plaintiff's

impairments, Plaintiff has not identified additional exertional impairments that she believes the

ALJ should have identified, and the ALJ sufficiently articulated the basis for her RFC finding.

[*Doc. 21* at 7-10].   Defendant further contends that the ALJ gave proper weight to the opinions in

the record and reasonably assessed Plaintiff's credibility.   *Id.* at 10-13].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the

claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations."

20 C.F.R. § 416.945(a)(1).  *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an

individual can still do despite his or her limitations.").   The ALJ must base the RFC assessment on

---

[1] The Global Assessment of Functioning (hereinafter "GAF") score is a measurement of the clinician's judgment of an individual's psychological, social and occupational functioning.  DSM-IV-TR at 32.   A GAF score within the range of 41 to 50 indicates "serious symptoms," such as "suicidal ideation, severe obsessional rituals, or frequent shoplifting," or "serious impairment in social, occupational, or school functioning."   *Id.* at 34.

all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.   SSR 96-8p at *5.   "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."   *Id.* at *7.   The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.   *Id.*

Here, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "[Plaintiff] can make only simple, work-related decisions with few workplace changes[, s]he should not be required to work at production-rate pace[; and she] is limited to occupations working primarily with things rather than with people."   *Doc. 13-3* at 18.   However, the ALJ makes no mention of Dr. Flynn's finding that Plaintiff's GAF score was 50, and fails to take into account his diagnoses of major depressive disorder and chronic post-traumatic stress disorder in her RFC determination.   *See* [*Doc. 13-17* at 23].   The ALJ stated that she gave "significant weight to the opinion of Dr. Flynn, which seems compatible with [the ALJ's RFC] assessment" (*Doc. 13-3* at 23), but fails to provide any explanation as to which part of Dr. Flynn's opinion she is giving significant weight, and fails to state what evidence from the record supports that decision.   Even the Defendant acknowledges that the ALJ's statement regarding the weight she gave to Dr. Flynn's findings "is not a model of clarity."   [*Doc. 21* at 11].   The ALJ's failure to provide any support for her implicit rejection of a

portion of Dr. Flynn's opinion without explaining why she is doing so or providing support from the record for that decision is legal error.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.") (citation omitted); *see also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) (an ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").  Moreover, Defendant's attempt to supply the ALJ's reasoning for her findings (*see Doc. 21* at 11) is an impermissible *post hoc* rationalization.  *See Robinson*, 366 F.3d at 1084  (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).  For these reasons, the Court finds that this case should be remanded for an evaluation of Dr. Flynn's findings in accordance with SSR 96-8p and other applicable law.

## C.   Plaintiff's Remaining Claims

The Court finds that Plaintiff's claim that the ALJ erred by only briefly mentioning Plaintiff's hypertension, hyperthyroidism, hepatitis C and alcohol abuse (in remission) (*Doc. 20* at 8-9) is without merit because the ALJ did consider those impairments in her opinion (*see Doc. 13-3* at 16-17 and 20).   Moreover, Plaintiff fails to provide any support for this alleged error, so the Court further finds that this claim has been waived.  *See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir. 2009) (finding that conclusory issues that are not developed have been waived).   The Court also finds that Plaintiff's claims that the ALJ improperly considered the opinions of Peggy Harter, LPCC and the state agency consultants, failed to provide a

function-by-function assessment of how she arrived at the RFC, and erred in her credibility assessment (*Doc. 20* at 10-11), have also been waived because Plaintiff fails to develop those claims.   Plaintiff contends that the ALJ erred (1) in giving Ms. Harter's opinion little weight based on the ALJ's opinion that it "is at odds with the opinions of acceptable medical sources," because the ALJ did not make clear who were the acceptable medical sources, and (2) because Dr. Flynn's findings are consistent with Ms. Harter's findings.   *Id.* at 10-11.   However, Plaintiff acknowledges that Dr. Flynn did not find the moderate or marked limitations that Ms. Harter did (*see id.* at 11; *compare Doc. 13-9* at 3-8 *with Doc. 13-17* at 21-23), so Plaintiff's contention that their opinions are consistent is without merit.   Moreover, Plaintiff again fails to provide any support for these remaining claims, so the Court finds that they have been waived.

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider Dr. Flynn's findings as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for Rehearing, With Supporting Memorandum (Doc. 20)*** is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**